Submitted February 25, 2014, conviction for resisting arrest reversed and remanded, otherwise affirmed July 8, 2015, petition for review allowed January 14, 2016 (358 Or 529)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SEAN MICHAEL McNALLY,
*Defendant-Appellant.*

Multnomah County Circuit Court
111152528; A150977

353 P3d 1255

Peter Gartlan, Chief Defender, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and De Muniz, Senior Judge.

ARMSTRONG, P. J.

.

## ARMSTRONG, P. J.

Defendant appeals a judgment of conviction for second-degree criminal trespass, ORS 164.245, interfering with a peace officer, ORS 162.247, and resisting arrest, ORS 162.315, raising two assignments of error. Defendant first contends that the trial court erred by refusing to instruct the jury that a person does not commit the crime of interfering with a peace officer by engaging in passive resistance. Defendant next contends that the trial court erred by instructing the jury that a peace officer "may use physical force" when arresting a person if "the officer reasonably believes physical force is necessary to make an arrest." As explained below, we reverse defendant's conviction for resisting arrest but otherwise affirm.

Defendant got into an argument with a ticket agent at an intercity bus station in Portland. The ticket agent called a security guard, and the guard asked defendant to leave the station. Defendant refused to leave. The security guard called the police, and two officers arrived 15 to 20 minutes later.

The officers told defendant to grab his things and leave the station. When defendant refused to do that, an officer picked up defendant's bags and placed them outside the bus station, where defendant followed him. A crowd gathered around defendant and the officers and, after several minutes, one of the officers turned to the crowd and asked whether defendant deserved another chance to leave. At trial, the officers' accounts of what transpired next differed dramatically from defendant's account. The officers testified that defendant was very agitated and repeatedly yelled at them, telling them that he was ready for a fight and putting up his fists. Defendant testified that the officers were unnecessarily aggressive and that they used an unreasonable amount of force in arresting him. He noted that they repeatedly told him that they were not there to mediate the dispute and that one of the officers had covertly tried to unholster his Taser.

The officers eventually decided to arrest defendant. Instead of telling defendant that he was under arrest, one of the officers said "1061" to the other officer—which the officer

testified is shorthand for "let's move in and \*\*\* handcuff this person"—and the other officer nodded. The officers explained at trial that they believed that defendant wanted to fight them and, therefore, telling him that he was under arrest would have been counterproductive. While defendant was bending down to pick up a cigarette that he had dropped, one of the officers put defendant in a headlock. Defendant got out of the headlock and began grappling with the officer. The other officer then tackled defendant and the officer who was grappling with defendant, bringing all three to the ground. Defendant testified that he stopped struggling once he was on the ground and realized that he was under arrest.

The state charged defendant with second-degree trespass, interfering with a peace officer, and resisting arrest. Defendant asserted at trial that he should be acquitted of interfering with a peace officer because, at most, his actions constituted passive resistance. *See* ORS 162.247(3) (stating that a person who offers only "passive resistance" does not commit the crime of interfering with a peace officer). He also raised the defense of self-defense to the charge of resisting arrest. *See* ORS 161.209 (providing that a person may use physical force to defend himself from "what the person reasonably believes to be the use or imminent use of unlawful physical force").

After both sides rested, defendant asked the trial court to give two special jury instructions. The first proposed instruction addressed the circumstances under which a person can lawfully resist an arresting officer's use of force. The proposed instruction differed substantively from the instruction that the court ultimately gave the jury, in that it omitted any discussion of whether the arresting officer reasonably believed that physical force was required to arrest defendant.[1] Defendant explained his request for his proposed instruction in the following colloquy:

---

[1] Defendant's proposed jury instruction states:

"If [defendant] believed, and a reasonable person in his position would have believed, that the use or imminent use of force against him exceeded the force reasonably necessary to effect the arrest, then he was entitled to defend himself from that use of force.

"The burden of proof is on the state to disprove the existence of the defense of self-defense beyond a reasonable doubt."

"THE COURT:   So you're—I guess I'm not really—the special instructions you have I'm not particularly in favor of. So tell—let's start with 1.

"* * * * *

"[DEFENSE COUNSEL]:   * * * [U]nder the current standard instruction for resist [sic] arrest, self-defense, there is a portion of that that talks about whether the officers' use of force exceeded the—the amount, basically saying—it's almost like they're saying the jury has to find the officer used excessive force basically in order to be able to use self-defense.

"And what this *Oliphant* case says: That a person's right to use force in self-defense depends on the person's own reasonable belief and the necessity for such action and not whether the force used or about to be used on him actually was unlawful.

"And you know, they—they found that it was error in refusing to administer defendant's requested jury instruction on self-defense justification as it pertained to the charge of resisting arrest and assaulting a public safety officer was not harmless, and they—they overturned it because of that.

"And—and really what it says when they go into the—the analysis is they talk about it's really what's in the person who's being arrested's, it's their mind, and whether that was reasonable. It has to be reasonable, and I think that's part of my instruction that I'm requesting. But [the jury does not] *have to make a finding that the officers used excessive force.*"

---

In contrast, the court instructed the jury as follows:

"A peace officer may use force on a person he is arresting but only to the extent that the officer reasonably believes physical force is necessary to make an arrest. An arresting officer may use reasonable physical force to overcome opposition to the arrest.

"[Defendant] has raised the defense of self-defense to the charge of resisting arrest. If [defendant] reasonably believed that the officers arresting him were using more physical force than was necessary to make the arrest, the [defendant] was entitled to the use of physical force in self-defense.

"In defending, [defendant] was entitled to use only that degree of physical force that he reasonably believed to be necessary to defend himself against what he believed to be the excessive force. The burden of proof is on the State to prove beyond a reasonable doubt that this defense does not apply."

(Emphasis added.) Defendant's other special jury instruction stated that the jury should acquit defendant of interfering with a peace officer if it found that he had "engaged in activity that would constitute * * * passive resistance."

The trial court refused to give either of defendant's proposed instructions. It explained its decision to instruct the jury that an officer can use force to the extent that the officer reasonably believes it necessary to make an arrest as follows:

> "I think that the self-defense [instruction] in the uniform instruction doesn't shift the burden. I don't know why the language in the *Oliphant* case is different, but it is different from the language in the statute—I mean in the self-defense arrest.
>
> "So I'll leave the—the regular self-defense, and I will not do the No. 1, and you clearly can take an exception."

The jury found defendant guilty of all charges. The court entered a judgment of conviction on the charges, and defendant now appeals.

Defendant raises two assignments of error on appeal. Defendant first contends that the trial court erred by failing to instruct the jury that a person does not commit the crime of interfering with a peace officer by engaging in passive resistance. He also contends that the trial court erred in instructing the jury that a peace officer can use force to arrest a person if "the officer reasonably believes physical force is necessary to make an arrest." Defendant argues that the latter instruction runs afoul of *State v. Oliphant*, 347 Or 175, 218 P3d 1281 (2009). In *Oliphant*, the defendant was charged with resisting arrest and raised the defense of self-defense. He was convicted of the charge, but the Supreme Court reversed the conviction because it concluded that the trial court had erred by instructing the jury to consider whether the arresting officer reasonably believed that force was needed to make the arrest. The court held that, by instructing the jury to consider the officer's beliefs, the trial court had "impermissibly shift[ed] the focus of the jury's deliberations on a defendant's self-defense claim from what the defendant reasonably believe[d] to what the officer believe[d]." *Id.* at 198.

The state concedes that the trial court erred by failing to instruct the jury that a person does not commit the crime of interfering with a peace officer if the person engaged only in passive resistance. However, in light of our decision in *State v. Patnesky*, 265 Or App 356, 335 P3d 331 (2014), which was published after this case was submitted, we cannot accept the state's concession. In *Patnesky*, a peace officer approached the defendant and repeatedly asked the defendant to speak to him. The defendant would not respond to the officer's questions and, instead, worked on his car. The defendant was convicted of interfering with a peace officer. On appeal, the defendant argued that he should not have been convicted of interfering with a peace officer because he had engaged only in "passive resistance," which ORS 162.247(3)(b) provides cannot constitute interfering with a peace officer. We rejected the defendant's argument, holding that the term "passive resistance" applies only to "specific acts or techniques that are commonly associated with governmental protest or civil disobedience." *Id.* at 366.

We review a trial court's refusal to give a defendant's requested jury instruction for legal error. *State v. Moore*, 324 Or 396, 427, 927 P2d 1073 (1996). A party is generally entitled to have the court instruct a jury on a legal principle if there is evidence to support it and the proposed instruction accurately states the law. *State v. Thaxton*, 190 Or App 351, 356, 79 P3d 897 (2003). However, in this case, we conclude that the trial court did not err by refusing to give defendant's proposed jury instruction, because there was no evidence from which the jury could find that defendant was engaged in an act or technique that is associated with government protest or civil disobedience. Even assuming that the jury credited defendant's version of the events, nothing suggests that defendant was engaging in a non-cooperative technique or act known to be used to protest government action. Therefore, the trial court correctly refused to give defendant's proposed passive-resistance instruction.

With regard to defendant's second assignment of error—*viz.*, that the trial court erred by instructing the jury that an officer can use force to arrest a person but only "to the extent that the officer reasonably believes physical force is necessary to make an arrest"—the state disputes that

defendant preserved that issue for appeal. The state contends that defendant objected at trial only to the court's refusal to give his special jury instruction on self-defense—which defined when a person may use reasonable force against an arresting officer—and did not object to the court's instruction that an officer can use reasonable force to the extent the officer "reasonably believes" it to be necessary. The state also argues that, even if defendant preserved his objection, this case is distinguishable from *Oliphant.*

The state's preservation argument fails, because the record shows that defendant raised with the court whether it should instruct the jury that a peace officer "may use physical force" when arresting a person if "the officer reasonably believes physical force is necessary to make an arrest." When the trial court asked defendant why it should use his proposed self-defense jury instruction, defendant responded that, under *Oliphant,* the jury does not "have to make a finding that the officer used excessive force."

The record further indicates that the trial court understood defendant's objection. In explaining its decision not to use defendant's proposed instruction, the court distinguished this case from *Oliphant,* the case that defendant had cited for the proposition that focusing on the arresting officer's mental state constitutes error. The court further explained that its jury instructions did not impermissibly "shift the burden." We understand that statement to mean that the trial court believed that its instructions did not impermissibly shift the focus from defendant's beliefs to the officer's beliefs, as the jury instructions in *Oliphant* had done. *See Oliphant,* 347 Or at 198 (holding that instructing jury to consider officer's beliefs "impermissibly shifts the focus of the jury's deliberation on defendant's self-defense claim from what the defendant reasonably believes to what the officer believes"). That discussion indicates that the court understood defendant's argument to be that, under *Oliphant,* a trial court cannot instruct the jury to consider the arresting officer's beliefs when a defendant asserts the defense of self-defense. In sum, we conclude that defendant preserved his argument that the trial court should not have instructed the jury to consider the arresting officer's beliefs, and we proceed to address that argument.

We review the jury instructions that were given for legal error. *See, e.g., State v. Pierce*, 235 Or App 372, 374, 232 P3d 978 (2010). In doing so, we consider the entirety of the instructions that the trial court gave. *See State v. Woodman*, 341 Or 105, 118, 138 P3d 1 (2006).

We reject the state's contention that this case is distinguishable from *Oliphant*. The state correctly notes that the trial court's instructions in *Oliphant* referred a number of times to the arresting officer's beliefs, while the jury instructions in this case mentioned the arresting officer's beliefs only once. However, in light of the Supreme Court's decision in *State v. Vanornum*, 354 Or 614, 317 P3d 889 (2013), it is clear that any instruction about the arresting officer's beliefs in a case such as this constitutes error.

The defendant in *Vanornum* was arrested at a demonstration and failed to follow instructions that police officers had given him in the course of arresting him. The defendant was charged with resisting arrest and raised a defense of self-defense to the charge. The trial court instructed the jury that a peace officer can use reasonable force to the extent that the officer reasonably believed it to be necessary to make the arrest. *Id.* at 616 n 1. The defendant was convicted of resisting arrest and appealed, arguing that the jury instruction had shifted the focus from the defendant's beliefs to the arresting officer's beliefs and, hence, was error under *Oliphant*. The state responded that the trial court in *Oliphant* had instructed the jury multiple times to focus "on the police officer's belief," and, "because the instructions in [*Vanornum*] did not involve that sort of repetition," the case was distinguishable. *Id.* at 630.

The Supreme Court rejected the state's argument, stating that the other instructions "played no part in [its] assessment" in *Oliphant* and that what mattered was that "the instruction [was] an incorrect statement of the law," not how many times the incorrect statement was made. *Id.* After *Vanornum*, it is clear that, if a defendant whom the state has charged with resisting arrest is entitled to a jury instruction about the defense of self-defense, then a court commits error by also instructing the jury to consider the arresting officer's beliefs. Given that the state does not dispute that defendant

was entitled to a jury instruction about the defense of self-defense, we conclude the court erred in instructing the jury as it did.

That error was not harmless. A person may use physical force to defend against "what the person reasonably believes to be the use or imminent use of unlawful physical force." ORS 161.209. The evidence at trial showed that defendant was never told that he was being placed under arrest. From that evidence, a jury could find that defendant reasonably believed that he had been unlawfully placed in the headlock and, consequently, was allowed to use force to defend himself against that force.

In sum, we conclude that the trial court did not err by failing to instruct the jury that a person does not commit the crime of interfering with a peace officer by engaging in passive resistance. However, we conclude that the trial court did err by instructing the jury that the arresting officer could use force in arresting defendant if the officer reasonably believed that force was necessary to do that. Accordingly, we reverse defendant's conviction for resisting arrest.

Conviction for resisting arrest reversed and remanded; otherwise affirmed.